## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

Case No: 4:19-mc-00004
(Southern District of Florida Case No. 18-cv-80748-ALTMAN/Reinhart)

DANIEL HALL, BURFORD
CAPITAL, LLC, and DUNDROD
INVESTMENTS, LTD.,

      Plaintiffs,

      vs.

HARRY SARGEANT, III,

      Defendant.

---

## HARRY SARGEANT, III'S AND NONPARTY FOLEY & LARDNER LLP'S MOTION TO QUASH/MOTION FOR PROTECTIVE ORDER <u>RELATED TO SUBPOENAS FOR DEPOSITION AND DOCUMENTS</u>

Harry Sargeant, III, ("HS3") and non-party, HS3's lead trial counsel Foley & Lardner LLP ("Foley"), pursuant to Federal Rules of Civil Procedure 26, 30, and 45, respectfully move this Court to quash the Subpoena to Produce Documents ("Document Subpoena" attached as *Exhibit 1*) and Subpoena to Testify at a Deposition (the "30(b)(6) Subpoena," attached as *Exhibit 2*, and collectively the "Subpoenas") directed to Foley. In the alternative, the Court should issue a protective order limiting the scope of the Subpoenas. The Subpoenas were served on March 25, 2019, by Daniel Hall ("Hall"), Burford Capital, LLC ("Burford"), and Dundrod Investments, Ltd., ("Dundrod" and collectively, "Plaintiffs"), the

plaintiffs in an action pending in the Southern District of Florida *Hall et al. v. Sargeant*, No. 18-80748 (S.D. Fla., filed June 8, 2018) (the "SDFL Action"). Foley is HS3's trial counsel in the SDFL Action. Foley served objections to the Document Subpoena on April 5, 2019, which are attached as *Exhibit 3*. The Subpoenas command performance in this District (*See* Fed. R. Civ. P. 45(d)(3)(A)), where HS3's lead counsel is based.

HS3 has standing to move to quash the Subpoenas because they call for privileged information: "Here, insofar as [attorney] and [party/client] are claiming attorney-client privilege with respect to the requested records, the court is satisfied that they have standing under Rule 45 to object to the subpoena directed to [the attorney]." *Fed. Deposit Ins. Corp. v. Amos*, No. 12-548, 2014 WL 12540510, at *2 (N.D. Fla. May 16, 2014).

The deposition was originally scheduled to occur in Tallahassee on April 12, 2019, but Plaintiffs have extended the deadline to respond to the Subpoenas to April 26, 2019. In addition, Plaintiffs have agreed to stay compliance with the Subpoenas until judicial resolution of this motion to quash.

## <u>REQUEST FOR ORAL ARGUMENT</u>

HS3 and Foley respectfully request oral argument in support of this motion as the litigation history is detailed and the Court may benefit from having counsel available to answer questions. HS3 and Foley estimate that 30 minutes will be required for oral argument.

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION

HS3 and Foley respectfully submit the following memorandum of law in support of their motion to quash and/or modify the Subpoenas.

## INTRODUCTION

A subpoena directed to trial counsel "not only disrupts the adversarial system and lowers the standards of the profession, but . . . also adds to the already burdensome time and costs of litigation." *D.O.T. Connectors, Inc. v. J.B. Nottingham & Co.*, No. 99-311, 2001 WL 34104929, at *1 (N.D. Fla. Jan. 22, 2001) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)); *see also Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 528 (S.D. Fla. 2015) (subpoenas directed to trial counsel "inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case.") (quoting *West Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990)); *Nat'l Union Fire Ins. Co. v. Fla. Crystals Corp.*, No. 14-81134, 2016 WL 7542091, at *4 (S.D. Fla. Apr. 12, 2016) ("[D]eposing opposing counsel in the midst of an ongoing proceeding is 'generally offensive to our adversarial system' and is an extraordinary step that will rarely be justified.").

The Subpoenas for deposition and documents served on Foley are cast from the same mold. The Subpoenas seek to uncover attorney-client communications and attorney work product about the development of the Second Amended

Complaint ("SAC") in a prior federal action, the development and legal analysis behind the counterclaims in the SDFL Action, and the drafting of a settlement agreement and release referenced in Plaintiffs' complaint in the SDFL Action—all at issue in the SDFL Action where Foley is HS3's lead trial counsel.  This attempt to pry into HS3's litigation strategy is wholly inappropriate, and the Court should quash the Subpoenas.

## FACTUAL BACKGROUND

The underlying case relates to Hall's acquisition of sensitive and salacious emails involving HS3, the background of which is rather involved but will be explained briefly here to provide context for this motion.  Hall was a principal in a corporate investigation company called Focus Intelligence, Ltd. ("Focus"), operating out of London.  Mohammad Al-Saleh ("Al-Saleh") retained Hall to search for assets of HS3 as part of enforcing a Florida state court judgment entered against HS3 and other defendants.  *Exhibit 4.*  As part of his efforts, Hall came into contact with Daniel Sargeant, HS3's brother, who was in a bitter feud with HS3 over ownership interests in various Sargeant family businesses.  HS3 had been ousted from those businesses in the early part of 2013 and was told that his email account was destroyed around that time.  *Exhibit 5.*

However, Daniel Sargeant retained access to HS3's email account.  Later, when Hall and Daniel Sargeant met in January 2015, Daniel Sargeant told Hall of

HS3's email account and his ability to access it.  *Exhibit 6*.  After their meeting, Daniel Sargeant provided to Hall, via Daniel Sargeant's lawyer, HS3's emails relevant to HS3's businesses.  Daniel Sargeant's lawyer had also mentioned the salacious content but did not find it appropriate for him to transmit, or for Al-Saleh's team to have, that sensitive content.  *See generally Exhibit 7*.

The Al-Saleh dispute was settled on October 4, 2016, with payments to be made and ancillary documents to be drafted, all of which was completed by January 2017.  In the meantime, in October 2016, following the settlement and execution of the releases, Hall set out to acquire the salacious content that Daniel Sargeant's lawyer had previously refused to provide.  Hall did so by offering his own client's confidential documents, referred to as the "Ruperti Material," to entice Daniel Sargeant to access HS3's email account and obtain the salacious material and then provide that salacious content to Hall on a USB drive. *See generally Exhibit 8*.

To provide Hall what he requested, Daniel Sargeant connected Hall with Annette Perez, an employee with the Sargeant family businesses, who had formerly worked for HS3.  She placed HS3's emails, which included the salacious content, onto a USB drive and delivered it to Hall in Miami on October 14, 2016. *See generally Exhibit 9*.

After Hall received HS3's emails, he forwarded a sampling of salacious pictures and videos to several of his friends and colleagues. *See generally Exhibit 10*. Notably, when emailing the contents, he used his personal email address.

HS3 slowly became aware of what had transpired, first through an affidavit of Daniel Sargeant's lawyer, Andrew Preston ("Preston"). *See Exhibit 11*. The Sargeant family filed Preston's affidavit as part of an effort to recover against Wilmer Ruperti ("Ruperti") for an alleged fraud, relying on the Ruperti Material that Hall improperly divulged to Daniel Sargeant. In his affidavit, Preston detailed the information exchange and credited Daniel Sargeant with providing to Hall "personal material relating to" HS3 "of a sensitive personal nature." Exh. 11 at ¶ 155.

HS3 filed his own suit against Ruperti in the Southern District of Florida. Daniel Sargeant, through a corporate entity, intervened in HS3's lawsuit against Ruperti.[1] HS3 requested the material provided to Hall as part of discovery in that lawsuit. Daniel Sargeant, through the corporate entity, produced only some of the salacious portions of the material provided to Hall. As HS3 later discovered, this was an incomplete set of what Daniel Sargeant had provided to Hall. *See* Exh. 9 at 4-6, messages 35-44.

---

[1] This lawsuit was styled *HS3 v. Maroil Trading, Inc. et al.*, No. 17-81070 (S.D. Fla. filed September 25, 2017).

HS3 filed the Second Amended Complaint (the "SAC") in the prior federal action alleging, against Hall, violations of the Computer Fraud and Abuse Act ("CFAA"), conspiracy to violate CFAA, and conspiracy to violate HS3's privacy. At a hearing on Hall's motion to dismiss the SAC, the presiding judge, Magistrate Judge Bruce Reinhart, noted that if HS3's federal claims "go away, this case is not in federal court anymore. The intrusion claim and civil conspiracy claim are state law claims for which there is no supplemental jurisdiction if they can't properly allege violations under the [federal counts]." The Court noted further: "I don't see how you are ever going to be able to plead CFAA . . . counts in this case." (SDFL Action, ECF 190 at 130-31).

Following Judge Reinhart's guidance, HS3 voluntarily dismissed his federal claims against Hall and filed suit against the same defendants in state court with only state law claims. However, just before HS3 filed his state court complaint, Hall, Burford, and Dundrod, filed the SDFL Action against HS3. *Exhibit 12* (Complaint in the SDFL Action). In the SDFL Action, Plaintiffs alleged that HS3's filing of the SAC was malicious prosecution and a breach of a release from the Al-Saleh settlement. Exh 12, Count III and Count II, respectively. They also sought declaratory relief seeking a determination of non-liability under the SAC.

Exh 12, Count I.[2]  Plaintiffs exhibited the relevant settlement, settlement amendment and release to their complaint. *Exhibits 13*, *14*, and *15*, respectively.

HS3 filed an answer and counterclaims in the SDFL Action (*Exhibits 16* and *17*), but the Court recently dismissed the counterclaims with prejudice.  *Exhibit 18*. The answer did not assert an advice of counsel defense.  The SDFL Action is in the discovery stage, and the discovery deadline was recently extended to June 26, 2019.  *Exhibit 19* (docket in the SDFL Action).  While HS3's deposition was formerly scheduled for April 8, 2019, it has now been postponed in light of the extension and not yet rescheduled.

Foley was HS3's counsel for the Al-Saleh settlement, the SAC, the state court complaint, and remains his lead trial counsel in the SDFL Action.  HS3's individual lead counsel, Christopher M. Kise, is based out of Foley's Tallahassee office.[3]

Plaintiffs served the Subpoenas on March 25, 2019.  The Document Subpoena seeks the following categories of documents:

---

[2] Count I of the Plaintiffs' Complaint in the SDFL Action was recently dismissed as moot.  Exh. 19 at ECF Nos. 186, 187.

[3] The Court granted the scheduling extensions in the SDFL Action based on Mr. Kise's personal health issues, which remain unresolved.  To the extent any discovery would proceed against Foley, Mr. Kise would have to be involved as he was—and is—HS3's lead counsel in all areas implicated by the Subpoenas.

[1.]    . . . all Documents reflecting the factual basis for, and/or any factual investigation You conducted relating to, HS3's allegations in the SAC.

[2.]    . . . all Documents reflecting the factual basis for, and/or any factual investigation You conducted relating to, HS3's allegations in the Original Counterclaims.

[3.]    . . . all Documents reflecting the factual basis for, and/or any factual investigation You conducted relating to, HS3's allegations in the Amended Counterclaims.

[4.]    . . . all Documents concerning Your Communications and interactions with Hall, Burford, Dundrod, Mohammed Al-Saleh, or counsel to any of the foregoing, relating to the Settlement Agreement, Release I, and/or Release II, or any mediation among the parties.

[5.]    . . . all Documents concerning the events described in the Gulf Stream Police Report and Petitions for Injunction filed in this case at ECF Nos. 102-1 through 102-5. For avoidance of doubt, this Request includes: (a) all Documents reflecting Your and/or HS3's knowledge of the text messages and pictures reproduced in the Police Report, and (b) all Documents concerning Your Communications with HS3, Deborah Sargeant, Morgan Sargeant, and/or Harry Sargeant IV regarding the events.

[6.]    . . . all Documents concerning Your Communications and interactions with Andrew Reisman and/or the ELIJAH companies relating to HS3.

Exh. 1 at 7-8.  Each document request is preceded by the same phrase: "To the extent not already produced or logged in response to Plaintiffs' requests for production of documents to HS3."  *Id.*  Foley served objections to the Document Subpoena on April 3, 2019.  Exh. 3.

The 30(b)(6) Subpoena seeks to depose a witness educated on the following topics:

[1.]    The factual basis for, and any factual investigation You conducted concerning, HS3's allegations in the SAC, including any documents, witnesses, data, and/or other information on which You and/or HS3 relied.

[2.]    Any factual and/or legal analysis You conducted prior to filing the SAC regarding whether the claims against Hall in the SAC were released by the Settlement Agreement, Release I, and/or Release II.

[3.]    HS3's reasons for voluntarily dismissing the SAC.

[4.]    The factual basis for, and any factual investigation You conducted concerning, HS3's allegations in the State-Court Complaint, including any documents, witnesses, data, and/or other information on which You and/or HS3 relied.

[5.]    The factual basis for, and any factual investigation You conducted concerning, HS3's allegations in the Original Counterclaims, including any documents, witnesses, data, and/or other information on which You and/or HS3 relied.

[6.]    The factual basis for, and any factual investigation You conducted concerning, HS3's allegations in the Amended Counterclaims, including any documents, witnesses, data, and/or other information on which You and/or HS3 relied.

[7.]    Your communications and interactions with Hall, Burford, Dundrod, Mohammed Al- Saleh, or counsel to any of the foregoing, relating to the Settlement Agreement, Release I, and/or Release II, including at any mediation among the parties.

[8.]    The events described in the Gulf Stream Police Report and Petitions for Injunction filed in this case at ECF Nos. 102-1 through 102-5.

[9.]    Any work performed by Andrew Reisman and/or the ELIJAH companies on behalf of You, HS3, Deborah Sargeant, Morgan Sargeant, and/or Harry Sargeant IV.

Exh. 2 at 5-11.  Most of the above topics include several subtopics.

## LEGAL STANDARD

The deposition of trial counsel "disrupts the adversarial system" and "detracts from the quality of client representation."  *D.O.T. Connectors, Inc.*, 2001 WL 34104929, at *1 (quoting *Shelton*, 805 F.2d at 1327); *see also Rocket Real Estate, LLC v. Maestres*, No. 15-62488, 2016 WL 11503947, at *1 (S.D. Fla. June 8, 2016) (depositions of trial counsel "are so disruptive that there is a presumption of good cause to support the entry of a protective order") (citing *West Peninsular*, 132 F.R.D. at 302; *Sparton Corp. v. United States*, 44 Fed. Cl. 557, 561 (Fed. Cl. 1999)).

Thus, a deposition of the opposing party's attorney is "disfavored and calls for special scrutiny."  *D.O.T. Connectors, Inc.*, 2001 WL 34104929, at *1.  To depose trial counsel, the party seeking the deposition must demonstrate that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."  *Id.* (citations omitted); *see also Rocket Real Estate*, 2016 WL 11503947, at *1 (citing *Sun Capital Partners*, 310 F.R.D. at 528;

*Klayman v. Freedom's Watch, Inc.*, No. 07-22433, 2007 WL 4414803, at *4 (S.D. Fla. Dec. 14, 2007)).

Courts apply these same factors to subpoenas for documents to trial counsel. *See, e.g.*, *Nat'l Union*, 2016 WL 7542091, at *5 (quashing deposition and document subpoenas, noting that issuing party had "failed to show that the information sought will not invade the attorney's work product or attorney-client privilege"); *Rocket Real Estate*, 2016 WL 11503947, at *1 (applying *Sun Capital Partners* framework and quashing deposition and document subpoenas served on party's counsel).

Further, the scope of discovery through a Rule 45 subpoena is the same as the scope of discovery under Rule 26. *See Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 521 (N.D. Fla. 2013) ("The reach of a subpoena issued pursuant to Rule 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1).") (citations and quotations omitted); *see also Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011). However, Rule 45 protects non-parties: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Indeed, Foley's status as a non-party is properly considered when determining the degree of burden of the discovery and weighs against disclosure. *See Ubiquiti Networks*, 295 F.R.D. at 521; *see also United Technologies Corp. v. Mazer*, 2007 WL 788877, at *1 (S.D. Fla. Mar. 14, 2007) ("status of the person as a non-party being a factor usually weighing against disclosure.") (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545 (11th Cir. 1985)); *Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533 (M.D. Fla. 2003) (finding non-party status weighs against disclosure and collecting cases).

A subpoena that fails to take such steps to protect a non-party from the burden of discovery must be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). In addition, the Court must impose sanctions on the party or its attorney who fails to comply. *See* Fed. R. Civ. P. 45(d)(1). Moreover, the Court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Finally, the proportionality principle sets the following boundaries on discovery – in assessing discovery requests, the Court should assess "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P.

26(b)(1).  A subpoena is overbroad and improper if it seeks documents or information that is irrelevant or not proportional to the needs of the case.  *See Ubiquiti Networks*, 295 F.R.D. at 527; *see also Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363, 2018 WL 1456614, at *4 (S.D. Fla. Mar. 23, 2018).

## ARGUMENT

Plaintiffs cannot overcome their burden to justify the Subpoenas.  The discovery Plaintiffs seek is entirely privileged and protected by the work product doctrine, and wholly duplicative of discovery that has been or should be issued only to HS3.  Yet Plaintiffs seek such discovery from HS3's lawyers even before Plaintiffs have taken HS3's deposition or challenged HS3's privilege objections to the Subpoenas.  The Subpoenas also fail because Plaintiffs attempt to go beyond the allegations in their complaint to discovery concerning the counterclaims that HS3 filed in the SDFL Action [SDFL Action, ECF Nos. 54, 68], which is not relevant to their complaint asserting only that the SAC in the prior action was maliciously asserted.

## I.  Plaintiffs Fail to Adequately Explore Alternate Sources.

The Subpoenas seek deposition testimony from Foley on nine different topics, and the production from Foley of six different categories of documents.  In each instance, Plaintiffs have not attempted to show that there are no alternative sources of the information.  Indeed, Plaintiffs acknowledge in the Document

Subpoena that every request is redundant to what they have already requested (or

should in the first instance have requested) of HS3 by appending the disclaimer

"To the extent not already produced or logged in response to Plaintiff's requests

for production of documents to HS3" at the beginning of every request.  Exh. 1 at

7-8.  Similarly, the majority of the topics in the 30(b)(6) Subpoena seek discovery

on "HS3's allegations," and could therefore first ask these questions of HS3.  Exh.

2 at 5-11.

As Plaintiffs have failed and cannot overcome their burden on the first

element of the extraordinary standard required to take discovery from trial counsel,

the Court should quash the Subpoenas in their entirety.

## II.    The Subpoenas Request Irrelevant Information.

The Subpoenas are overbroad, attempting to sweep in information outside of

the pleadings in the SDFL Action or plainly irrelevant to Plaintiffs' claims.  First,

the Subpoenas seek discovery on HS3's investigation and litigation strategy related

to the state case and the counterclaims filed in the SDFL Action.  Exh. 1 at Request

Nos. 2, 3; Exh. 2 at Topics 4, 5, and 6.  Plaintiffs have pled only that the SAC was

a malicious prosecution.  Exh. 12 at ¶¶ 59-66.  Thus, these other pleadings are not

relevant.

Further, the Document Subpoena seeks "all Documents" for all six

categories set forth above.  While all of the requests are improper, Request 6 is

particularly egregious.  It seeks "all Documents concerning [Foley]'s

Communications and interactions" with a consulting expert, Elijah, Ltd ("Elijah").

Foley has many engagements with Elijah on entirely separate HS3 matters.  These

communications are in no way relevant to Plaintiffs' claims.  But, regardless, all

information related to Elijah is outside the scope of discovery in this case:[4]

"Ordinarily, a party may not . . . discover facts known or opinions held by an

expert who has been retained or specially employed by another party in

anticipation of litigation or to prepare for trial and who is not expected to be called

as a witness at trial" except "on a showing [of] exceptional circumstances under

which it is impracticable for the party to obtain facts or opinions on the same

subject by other means.'"  *In re Abilify (Aripiprazole) Products Liab. Litig.*, No.

16-2734, 2017 WL 2225614, at *2 (N.D. Fla. May 15, 2017) (quoting Fed. R. Civ.

P. 26(b)(4)(D)); *see also Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem

Uddin, Inc.*, No. 08-61868, 2009 WL 10667830, at *3 (S.D. Fla. June 9, 2009)

(same).

III.    **The Information Sought by the Subpoenas Is Subject to Attorney-Client Privilege and Work Product Protection.**

---

[4] Plaintiffs served subpoenas on Elijah for testimony and documents which are the subject of motions to quash or for protective order that Elijah and HS3 filed. Plaintiffs' response to those motions is due April 25, 2019.

Florida law governs the attorney-client privilege claims in this case because Plaintiffs are suing under breach of a Florida contract that specifies Florida law and a malicious prosecution tort purportedly committed in Florida through the filing of the SAC.  *See* Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); Exh. 12 at 14-16. However, the attorney work product is governed by the Federal Rules of Civil Procedure, even in a diversity case.  *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 699 (S.D. Fla. 2007) ("[I]n a federal diversity suit, the work product doctrine is a limitation on discovery in federal cases and federal law provides the primary decisional framework.") (citation omitted).

As the Subpoenas request documents and testimony from a law firm representing the opposing party as trial counsel in the SDFL Action related to matters at issue in that action, they of course seek discovery protected by the attorney-client privilege and work product doctrine.  Plaintiffs have made no showing of waiver related to these communications.

Plaintiffs are expected to argue that privileged discovery and work product are at issue because they have pled a malicious prosecution count.  Plaintiffs' argument, however, would result in piercing the privilege and work product protections any time malicious prosecution is alleged.  Moreover, at issue waiver requires the following:

Under this doctrine, a party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense.

*Fla. Dep't of Fin. Servs.*, 2012 WL 13026761, at *5 (N.D. Fla. Jan. 6, 2012)

(quoting *Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D. Fla. 2008)).

In addition, at issue waiver does not reach opinion work product. In the Eleventh Circuit, "opinion work product 'enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'" *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994). *Cox* held that the doctrine of subject matter waiver "does not extend to materials protected by the opinion work product privilege." *Id.* (citing *In re Martin Marietta Corp.*, 856 F.2d 619, 625-26 (4th Cir. 1988)). *See also Kahn v. United States*, No. 13-24366, 2015 WL 4112081, at *4 (S.D. Fla. July 8, 2015) (malicious prosecution does not create at-issue waiver for work product from federal criminal trial).

Recently in the SDFL Action, in an attempt to force production of several documents reflected in HS3's privilege log, Plaintiffs eschewed a formal analysis of at-issue waiver under the above framework and have instead opted to argue by analogy to bad faith insurance cases, seeking to impute a good-faith requirement

into the probable cause element of malicious prosecution.[5]  *See* SDFL Action ECF

No. 181 (citing *Tolz v. Geico, Gen. Ins. Co.*, No. 08-80663, 2010 WL 384745, at

*4 (S.D. Fla. Jan. 27, 2010); *Allstate Indem. Co. v. Ruiz*, 899 So.2d 1121, 1128

(Fla. 2005)).  The Court in the SDFL Action heard initial argument on this issue on

April 19, 2016, and ordered additional briefing by April 26, 2019.

However, there is no requirement that a malicious prosecution defendant

establish good faith:  "To establish probable cause, it is not necessary to show that

the instigator of a lawsuit was certain of the outcome of the proceeding, but rather

that he had a reasonable belief, based on facts and circumstances known to him, in

the validity of the claim."  *Wright v. Yurko*, 446 So. 2d 1162, 1166 (Fla. 5th DCA

---

[5] The full elements of malicious prosecution are listed below:

> In order to prevail in a malicious prosecution action, a plaintiff must
> establish that: (1) an original criminal or civil judicial proceeding
> against the present plaintiff was commenced or continued; (2) the
> present defendant was the legal cause of the original proceeding
> against the present plaintiff as the defendant in the original
> proceeding; (3) the termination of the original proceeding constituted
> a bona fide termination of that proceeding in favor of the present
> plaintiff; (4) there was an absence of probable cause for the original
> proceeding; (5) there was malice on the part of the present defendant;
> and (6) the plaintiff suffered damage as a result of the original
> proceeding.

*Hornsby v. Nissan Motor Acceptance Corp.*, No. 15-231, 2016 WL 6023842, at *3
(N.D. Fla. Oct. 13, 2016) (dismissing malicious prosecution for sufficient probable
cause for criminal prosecution) (quoting *Alamo Rent-A-Car, Inc. v. Mancusi*, 632
So. 2d 1352, 1355 (Fla. 1994)).

1984). Further, "The standard for establishing probable cause in a civil action is extremely low and easily satisfied." *Gill v. Kostroff*, 82 F. Supp. 2d 1354, 1364 (M.D. Fla. 2000). *Wright* elaborates:

> in bringing a civil rather than a criminal suit. . . . [T]he instigator need not have the same degree of certainty as to the facts, or even the same belief in the soundness of his case . . . . He may, for example, reasonably submit a doubtful issue of law, where it is uncertain which view the court will take.

446 So. 2d at 1166-67. As noted above, the factual allegations of the SAC were well-supported by the evidence HS3 had available to him at the time, and were further supported by the written discovery in the SDFL Action showing that Hall came to Florida to obtain HS3's private emails and then distributed and joked about the salacious content therein. Because HS3's legal theory did not ultimately prevail does not mean that he lacked probable cause to file his claim.

Further, Plaintiffs have offered no argument to pierce the attorney-client privilege, acknowledging that their argument by analogy to bad faith insurance cases does not apply to attorney-client privileged communications. However, the documents and topics identified in the Subpoenas necessarily overlap with attorney client communications between HS3 and Foley, which is HS3's lead counsel for many years on a wide-range of matters. In any case, when seeking to depose trial counsel, Plaintiffs bear the burden to show that the requested discovery is not privileged, a showing they cannot make. *D.O.T. Connectors, Inc.*, 2001 WL

34104929, at *1; *West Peninsular*, 132 F.R.D. at 302; *Rocket Real Estate*, 2016 WL 11503947, at *1; *Sun Capital Partners*, 310 F.R.D. at 528.

Indeed, HS3 has responded to Plaintiffs' discovery requests, logging hundreds of privileged documents. To the extent that there is an alleged waiver, the Plaintiffs should first address it with the documents reflected on the privilege logs served in the SDFL Action, not with a deposition of and subpoena for documents to Foley. The Court in the SDFL Action has not yet ruled on Plaintiffs' attempts to pierce work product there, and any deposition of Foley before such a ruling would be premature.

## IV.    Subpoenas Impose Improper Burden on Non-Party Foley.

"With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *Ubiquiti*, 295 F.R.D. at 521 n.2.

The Document Subpoena requests documents from January 1, 2013, continuing to the present. Exh. 1 at 6. The 30(b)(6) Subpoena likewise states that the timeframe of the topics is January 1, 2017 through the present. Exh. 2 at 4. For example, one document request and topic, "the events described in the Gulf Stream Police Report" seeks information relating to an episode from December 2013 in which HS3's brother, James Sargeant, sent inappropriate threats and

images to HS3's wife, son, and daughter-in-law. Exh. 1 at 7-8 (Request 5); Exh. 2 at 11 (Topic 8). Plaintiffs have already deposed HS3's son and daughter-in-law in the SDFL Action related to that incident. It is reasonable to conclude that Foley has work-product and attorney-client communications from this year related to that incident. Plaintiffs make no attempt to limit their document requests and 30(b)(6) topics to exclude these privileged and protected communications and documents.[6]

The remaining burden on non-party factors of need and relevance have already been discussed above.

## V.    Foley is Unable to Comply with the Subpoenas at this Time.

The Subpoenas require the participation of lead counsel Christopher Kise, HS3's longtime personal and primary counsel and the principal actor for HS3 within Foley. However, as noted, Mr. Kise is currently convalescing from a serious cardiac episode. Plaintiffs' counsel was informed of this issue the day Mr. Kise checked into the emergency room and has since been apprised of the major developments. There is no practical way to prepare, for example, a 30(b)(6) deponent on Foley's "communications and interactions with Hall, Burford,

---

[6] Additionally, every document request in the Document Subpoena seeks "all Documents," which is defined broadly to include any writing "stored in any medium." *See generally* Exh 1 at 2, 7-8. Likewise, every topic except two in the 30(b)(6) Subpoena seeks a witness prepared on "any" factual or legal analysis (Topic 2), "any" document or factual investigation (Topic 1, 4, 5, 6), "any" mediation (Topic 7), or "any" work performed by a consulting expert (Topic 9).

Dundrod, Mohammad Al-Saleh, or counsel to any of the foregoing, relating to the Settlement Agreement" (Exh. 2 at 10, Topic 6) when Mr. Kise was the principal negotiator within Foley, including numerous phone calls and in-person discussions with Aviva Will, Burford's representative in the settlement negotiations. Unfortunately, however, Court intervention is still required to protect Foley from the unreasonableness of these Subpoenas as set forth above.

WHEREFORE, HS3 and Foley respectfully request that this Court quash the Subpoenas and enter any other relief that the Court finds appropriate. In the alternative, HS3 and Foley respectfully request that this Court modify the Subpoenas to reduce their scope and set a reasonable time to respond.

Respectfully submitted this 25th Day of April, 2019.

| _s/ Joshua M. Hawkes_____ | _/s/ Joshua M. Hawkes_____ |
|---|---|
| Melissa B. Coffey | Melissa B. Coffey |
| Florida Bar No. 84090 | Florida Bar No. 84090 |
| mcoffey@foley.com | mcoffey@foley.com |
| Joshua M. Hawkes | Joshua M. Hawkes |
| Florida Bar No. 112539 | Florida Bar No. 112539 |
| jhawkes@foley.com | jhawkes@foley.com |
| **FOLEY & LARDNER LLP** | **FOLEY & LARDNER LLP** |
| 106 East College Avenue | 106 East College Avenue |
| Tallahassee, FL 32301-7732 | Tallahassee, FL 32301-7732 |
| Telephone: (850) 222-6100 | Telephone: (850) 222-6100 |
| Facsimile: (850) 561-6475 | Facsimile: (850) 561-6475 |
| | |
| ***Attorneys for Harry Sargeant, III*** | ***Attorneys for Non-Party Foley & Lardner LLP*** |

## LOCAL RULE 7.1 CERTIFICATE

In accordance with N.D. Fla. Loc. R. 7.1(B), I hereby certify that Foley conferred with counsel for Plaintiffs in a good faith effort to resolve the issues presented in this motion without Court intervention and was unable to do so. Specifically, Foley inquired through emails sent on April 8 and 11, 2019, to counsel for Plaintiffs, and they did not agree to limit the scope of the depositions or document requests.

Further, in accordance with N.D. Fla. Loc. R. 7.1(F), I hereby certify that the above memorandum of law is 4,902 words, counting all headings, footnotes, and quotations count and not counting the case style, signature block, and any certificate of service toward the word limit.

*s/ Joshua M. Hawkes*
Joshua M. Hawkes

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2019, I served the foregoing document electronically on all parties identified on the attached Service List.

By: */s/ Joshua M. Hawkes*
Joshua M. Hawkes

## SERVICE LIST

Derek T. Ho
dho@kellogghansen.com
Andrew E. Goldsmith
agoldsmith@kellogghansen.com
Jan E. Messerschmidt
jmesserschmidt@kellogghansen.com
Christine A. Bonomo
cbonomo@kellogghansen.com
Minsuk Han
mhan@kellogghansen.com
**KELLOGG,      HANSEN,      TODD,**
**FIGEL & FREDERICK: P.L.L.C**
1615 M Street, N.W., Suite 400
Washington, DC 20036

Samuel A. Danon
sdanon@HuntonAK.com
mplantada@huntonak.com
Armando Cordoves, Jr
acordoves@huntonak.com,
avaldes@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2510
Facsimile: (305) 810-2460
*Attorneys for Plaintiffs*